UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA A. ROWETT, <br><br> Plaintiff, <br> -against- <br><br> PROSELECT INSURANCE COMPANY, D/B/A COVERYS, <br><br> Defendant. | 24-cv-05417 (ALC) <br><br> **OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Linda A. Rowett brings this employment discrimination action against Defendant ProSelect Insurance Company d/b/a Coverys alleging (1) religious discrimination in violation of Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) religious discrimination in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and (3) religious discrimination in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*  Plaintiff's action involves a COVID-19 vaccination policy implemented by Defendant.

Defendant moves for dismissal of Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  After careful review, Defendant's motion, ECF No. 33, is **DENIED**.

BACKGROUND

I. **Factual Background**

Unless otherwise indicated, the following facts are drawn from Plaintiff's Amended Complaint.  *See* ECF No. 27 ("Am. Compl.").  The Court also considers "any statements or

documents incorporated in [the Amended Complaint] by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks omitted).

Plaintiff was employed by Defendant as a Risk Consultant in Defendant's Risk Management Department from on or about December 3, 2018 until her termination effective January 7, 2022. Am. Compl. ¶¶ 23–24. The position description for Plaintiff's role described it as "a mobile position with home office setup" and Plaintiff primarily worked remotely from her home in the Bronx, New York using company-issued equipment and technology to perform her job duties. *Id.* ¶¶ 26–27. Prior to the COVID-19 pandemic, Plaintiff occasionally worked out of Defendant's satellite office in Morristown, New Jersey and also traveled to attend in-person meetings and events. *Id.* ¶ 28.

Beginning in or around March 2020, Defendant instituted a company-wide travel plan in light of the COVID-19 pandemic, barring employees from traveling to attend in-person meetings and events. *Id.* ¶ 32. Throughout the pandemic, Plaintiff continued to work remotely and performed her job duties satisfactorily. *Id.* ¶¶ 33–34.

On or about September 9, 2021, Defendant announced that vaccination against COVID-19 would be mandatory for the reopening of its offices planned initially for November 15, 2021. *Id.* ¶ 35. On October 21, 2021, Defendant's human resources ("HR") office emailed employees announcing a return-to-office date of January 10, 2022 and transmitted copies of Defendant's COVID-19 vaccination policy (the "Policy"), a vaccination policy FAQ, and a return to office FAQ. *Id.* ¶ 36. The same email also stated that employees seeking accommodations for any reason would be required to email HR no later than November 8, 2021 to initiate the process, but neither the email nor the Policy or vaccination policy FAQ provided any instructions about the

particular information or documentation required or recommended to be submitted as part of the request. *Id.* ¶¶ 39–40, 42.

The Policy allowed employees to "request a reasonable accommodation from [the] Policy in a written request to the Human Resources Department" and instructed employees seeking an accommodation to "indicate all relevant information on such forms including, without limitation: A description of the accommodation requested; and [t]he reason for the requested accommodation." *Id.* ¶ 41. Further, the Policy explained that "Coverys makes determinations about requested accommodations on a case-by-case basis considering various factors and based on an individualized assessment in each situation. Coverys strives to make these determinations expeditiously and in a fair and nondiscriminatory manner, in accordance with Coverys' equal employment opportunity policies and applicable law . . . ." *Id.*

Under the return to office FAQ, the Risk Consultant position was designated as a remote position. *Id.* ¶ 43. Moreover, although employees who were granted accommodations were considered "Qualified Employees" who were required to produce weekly negative COVID-19 testing, Qualified Employees who were also remote employees were "not expected to undergo weekly COVID-19 testing" but instead would need to "get tested one to three days prior to any business-related in-person experience, including any visits to a Coverys office, and produce a negative test to [HR] prior to [their] travel." *Id.* ¶ 45.

Plaintiff alleges that she is a Christian who holds sincere, bona fide religious objections to the COVID-19 vaccines. *Id.* ¶¶ 46–47. On November 8, 2021, Plaintiff emailed HR with her requests for both religious and medical exemptions to Defendant's COVID-19 vaccination policy, providing a personal statement outlining her religious and medical objections to the vaccines. *Id.* ¶¶ 48–50. With respect to her religious exemptions, Plaintiff noted in her email

that the imposition of a vaccine mandate amounted to a "violation of [her] God-given rights to choose how [she] treat [her] body and to violate [her] sincerely held spiritual beliefs" and that vaccination would "subject [her] to being forced to take a dangerous and morally repugnant vaccination that violates [her] sincerely held religious/spiritual beliefs, practices, and observances as stated." *Id.* ¶¶ 51, 53 (quoting her submitted objections). Plaintiff also explained:

> As a rule, I do not take vaccines of any kind and wish to disclose that my beliefs surrounding my health as well as my personal health practices themselves are closely tied to my sincerely held spiritual beliefs. Over the past ten years I have consciously chosen to respect my body as a temple of God by completely eliminating the use of hair color, anti-perspirants containing aluminum, and harmful household cleaning solutions as well as over-the-counter and prescription pharmaceuticals. I have progressively implemented these changes into my health habits and lifestyle to align with my beliefs and faith in my divine Creator. I do not believe anyone else has the right to dictate how I treat my body, nor can anyone force unknown substances into my body and what I believe to be the temple of God. My personal health practices rely on the consumption, ingestion and application of only natural and organic products made by God and produced in Nature in accordance with my spiritual belief that God has given us everything we need for perfect health. I have deliberately and consciously chosen to educate myself on natural means to promote health and to eliminate all man-made toxic chemicals from use in and on my body and in my environment. I have worked diligently to detoxify my body of all man-made chemicals and toxins in an effort to improve my overall bodily health. My family and friends can attest to my beliefs and practices and affirm that these are historical in nature and predate the COVID-19 pandemic.

*Id.* ¶ 52. In addition to describing her religious beliefs, Plaintiff noted her positions on the safety and efficacy of the vaccines and also pointed to her distrust of governmental entities and the pharmaceutical industry as additional reasons for which she would choose not to take the vaccine. *See* ECF No. 27-8 ("November 8 Letter").

On November 18, 2021, Plaintiff emailed HR asking about the status of her request for a medical accommodation, reiterating that "forcing [her] to put a substance in [her] body that [she] does] not feel safe accepting and that [she] would otherwise not choose is a violation of [her]

4

sincerely held religious beliefs." Am. Compl. ¶ 54. On December 3, 2021, Plaintiff received an email from HR containing letters denying her requests for religious and medical exemptions. *Id.* ¶ 55. The religious exemption denial letter (which was replaced with a slightly edited version that same day) cited workplace safety as the basis for the decision and stated that allowing Plaintiff "to work fully remote would cause an undue hardship on the Company." *Id.* ¶ 56. On December 8 and 9, 2021, Plaintiff followed up with questions about the denial letters—including how Defendant would suffer an undue hardship by allowing Plaintiff to continue to carry out her duties as a remote employee—but Defendant purportedly never provided answers to those questions. *Id.* ¶¶ 58–59.

On December 14, 2021, Plaintiff emailed HR a six-page appeal of Defendant's denial of her reasonable accommodation request for a religious exemption, reiterating in the appeal her religious objections to the COVID-19 vaccines. *Id.* ¶¶ 60–62. On December 15, 2021, Plaintiff received a letter from HR in response to her appeal letter which recounted the correspondence pertaining to Plaintiff's requested exemptions and which stated "Please be advised that your Religious Accommodation Request was denied because the Company is unable to provide you with an accommodation absent undue hardship or burden; an essential function of your position as a Risk Consultant requires you to travel to meet with clients, and this position cannot be performed entirely remotely." *Id.* ¶¶ 63–64. The same letter also asked Plaintiff to complete and submit an attestation form and, on December 17, 2021, Plaintiff submitted the form indicating that she would not become fully vaccinated. *Id.* ¶ 74. Also on December 17, 2021, Plaintiff responded to HR's response reiterating her position. *Id.* ¶¶ 66–67.

On December 20, 2021, Plaintiff received a letter from HR notifying her that her employment would be terminated effective January 7, 2022 "based upon violation of the

Mandatory COVID-19 Vaccination Policy." *Id.* ¶ 75. Plaintiff asserts that she was terminated because she was not vaccinated, despite seeking a reasonable accommodation on the basis of valid and sincere religious objections to the COVID-19 vaccines. *Id.* ¶ 77. Plaintiff also contends that there is no evidence that granting Plaintiff's religious exemption request would have caused Defendant undue hardship and that Defendant's position assumes that her being unvaccinated might impair her ability to work with some clients, thereby imposing a greater than *de minimis* burden on its business, but not a burden substantial enough to meet the standard under applicable law. *Id.* ¶¶ 68–73.

## II. Procedural History

On July 17, 2024, after having exhausted administrative remedies, Plaintiff filed her Complaint *pro se* and sought to proceed *in forma pauperis*. ECF Nos. 1–2. On July 18, 2024, Judge Swain granted Plaintiff's request to proceed *in forma pauperis.* ECF No. 5. On November 26, 2024, Defendant filed a letter seeking a premotion conference in advance of its anticipated motion to dismiss Plaintiff's Complaint. ECF No. 19. On December 20, 2024, Plaintiff filed a letter requesting a 30-day extension to respond to Defendant's letter because she was actively seeking counsel and the Court granted Plaintiff's request. ECF Nos. 21–22.

On January 9, 2025, counsel for Plaintiff entered their appearance. ECF No. 23. On January 13, 2025, Plaintiff filed a consent letter motion requesting an extension of time to file Plaintiff's Amended Complaint and the Court granted the request. ECF Nos. 24–25. On January 27, 2025, Plaintiff filed her Amended Complaint. ECF No. 27. On February 10, 2025, Defendant filed a letter seeking a premotion conference in advance of its anticipated motion to dismiss Plaintiff's Amended Complaint. ECF No. 30. That same day, Plaintiff filed a response. ECF No. 31. On February 12, 2025, the Court denied Defendant's request for a premotion

conference and granted Defendant leave to file a motion to dismiss the Amended Complaint. ECF No. 32. On March 5, 2025, Defendant filed its motion to dismiss and a supporting memorandum of law and declaration. ECF Nos. 33–35. On March 19, 2025, Plaintiff filed her opposition. ECF No. 36. On March 26, 2025, Defendant filed its reply. ECF No. 37. On May 18, 2025, Plaintiff filed a letter advising the Court of additional authority supporting its opposition to Defendant's motion to dismiss. ECF No. 38. On May 20, 2025, Defendant filed its opposition to Plaintiff's letter. ECF No. 39/

## STANDARD OF REVIEW

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

Plaintiff submits employment discrimination claims under Title VII, the NYSHRL, and the NYCHRL. For reasons stated below, the Court finds that all of Plaintiff's claims survive Defendant's motion to dismiss.

## I. Plaintiff's Title VII Religious Discrimination Survives

"In order to survive a motion to dismiss for a Title VII discrimination claim, 'a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Kueh v. New York & Presbyterian Hosp.*, No. 23-CV-666, 2024 WL 4882172, at *3 (S.D.N.Y. Nov. 25, 2024) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)). Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief," and imposes an obligation on an employer "to reasonably accommodate to an employee's . . . religious observance or practice" unless doing so would cause "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination for failure to accommodate, Plaintiff must show that (1) she held a "bona fide religious belief conflicting with an employment requirement"; (2) she informed his employer of this belief; and (3) she was "disciplined for failure to comply with the conflicting employment requirement." *See Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)). "[W]hen an employee has a genuine religious practice that conflicts with a requirement of employment," the employer "must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (citing *Knight*, 275 F.3d at 167). "An accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost to the employer.'" *Baker*, 445 F.3d at 548. Showing "undue hardship" is a "fact-specific inquiry[.]" *See Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (internal quotation marks omitted).

Defendant does not dispute that Plaintiff informed Defendant of her religious objections or that Plaintiff's failure to vaccinate led to her termination. Rather, Defendant argues that Plaintiff objected to the COVID-19 vaccine for overwhelmingly secular reasons and that—even if her objections were more so based on her religious beliefs—Plaintiff in any event "chose" to decline vaccination, purportedly demonstrating that there was not an actual conflict between her beliefs and the Policy. ECF No. 34 at 6–14. Defendant construes Plaintiff's purpotedly "incidental references to a 'God-given immune system' or 'the temple of God'" as an attempt "to transform her overwhelmingly secular concerns about governmental authority, pharmaceutical safety[,] or vaccine efficacy into religious objections that warrant accommodation under Title VII." *See id.* at 9. In so doing, Defendant effectively asks the Court to conclude that Plaintiff has not sufficiently alleged a bona fide religious belief conflicting with an employment requirement.

"A court's inquiry into sincerity properly extends to determining [(1)] whether the beliefs professed by a claimant are sincerely held and [(2)] whether they are, in his own scheme of things, religious." *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "The first requirement, (i.e., sincerity of a person's religious belief) is a question of fact—unsuitable to resolution at the motion to dismiss stage." *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 651 F. Supp. 3d 695, 721 (S.D.N.Y. 2023) (citations omitted); *see also LeFevre*, 745 F.2d at 159 ("The need for a full exposition of facts is profound under such circumstances since determining a [person's] state of mind is 'an awesome problem,' capable of resolution only by reference to a panoply of subjective factors.") (citation omitted). "As to the second requirement, whether the belief is religious, both the Supreme Court and the Second Circuit have cautioned courts regarding their limited function when determining

9

whether religious beliefs are protected because defining what is a religious belief or practice is more often than not a difficult and delicate task." *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265, 2023 WL 6214236, at *3 (E.D.N.Y. Sept. 25, 2023) (citing *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981); *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 818 (2d Cir. 2003)) (cleaned up).

Defendant cites some cases in which Second Circuit courts granted motions to dismiss in similar postures, but the Court concludes that the reasoning in those cases do not demand the same findings here. In *Beickert*, the plaintiff alleged "a bona fide religious belief that conflicts with the [defendant's] Vaccine Mandate because she observes the Jewish faith, and biblical teachings provide that [y]ou should be very careful to protect your life" and invoked Deuteronomy 4:15. *Beickert*, 2023 WL 6214236, at *3 (cleaned up). However, the court determined that "[the plaintiff's] non-compliance with the Vaccine Mandate rests on her desire for COVID-19 vaccines to be subjected to longer term testing, as with other vaccines and drugs . . . to ensure that the currently available COVID-19 vaccines are truly safe and effective and will not adversely affect [her] health. In other words, if COVID-19 vaccines were tested longer in order to ensure their safety and effectiveness like other vaccines and drugs, [the plaintiff] could get vaccinated and comply with the Vaccine Mandate." *Id.* at *4 (cleaned up). The court concluded that "[the plaintiff's] true concerns do not qualify as a proper basis for a religious exemption." *Id.*

Defendant asks that the Court find similar tensions in the instant case, but the Court cannot do so. The Court takes Plaintiff at her word when she alleges that she is a Christian, that "[a]s a rule, [she does] not take vaccines of any kind[,]" and that "[her] beliefs surrounding [her] personal health practices themselves are closely tied to [her] sincerely held spiritual beliefs"

10

Am. Compl. ¶¶ 46, 52.  Unlike the plaintiff in *Beickert*, Plaintiff in this case did not choose to take vaccines only when they can be shown to be safe with additional testing.  Rather, Plaintiff alleges that she does not take *any* vaccines and that she has "progressively implemented [] changes into [her] health habits and lifestyle to align with [her] beliefs and faith in [her] divine Creator.  *Id.* ¶ 52.  Even though Plaintiff also cites secular concerns, the Amended Complaint on its face suggests that they are intertwined with her sincerely-held religious beliefs.

Similarly, in *Matos*, the court recognized the plaintiff's belief that "her body is an extension of God's sacred temple."  *Matos v. Discovery Commc'ns*, LLC, 750 F. Supp. 3d 307, 322 (S.D.N.Y. 2024).  Yet, the court there ultimately determined that plaintiff did not clearly allege that her objection to a COVID-19 vaccine was "itself based on religion" or that her concerns were related to her faith more broadly or even to some divine or authoritative command.  *Id.* (citing *Petermann v. Aspirus, Inc.*, No. 22-CV-332, 2023 WL 2662899, at *2 (W.D. Wis. Mar. 28, 2023); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017); *Rizzo v. New York City Dep't of Sanitation*, No. 23-CV-7190, 2024 WL 3274455, at *2 (S.D.N.Y. July 2, 2024)).  The court also identified only attenuated links between the plaintiff's body-is-a-temple claim and their faith.  *See id*. at 322.  But here, critically, Plaintiff construes the COVID-19 as a "dangerous and morally repugnant vaccination that violates [her] sincerely held religious/spiritual beliefs, practices, and observances as stated."  Am. Comp. ¶ 53.  Plaintiff also alleges that such beliefs and practices "are historical in nature and predate the COVID-19 pandemic."  Am. Compl. ¶ 52.  In contrast to the plaintiff in *Matos*, Plaintiff has sufficiently linked her body-is-a-temple beliefs with her broader faith.

The Court now turns to Defendant's assertion that because Plaintiff stated that she "chose" not to obtain the vaccine (instead of stating that her religious beliefs "prohibited" her

11

from obtaining the vaccine) then she has somehow shown that there is no actual conflict between her beliefs and the Policy  The Court considers this argument to be semantical at best.  As discussed earlier, Plaintiff states that she does not take any vaccines of any kind.  To the extent Plaintiff's word choice poses any issue, it is not fatal for Plaintiff's claim at this stage.  Rather, having drawn all inferences in Plaintiff's favor, the Court finds that she has made a sufficient prima facie case for religious discrimination under Title VII.  *See, e.g.*, *Gaskin-El v. 1199SSEIU Nat'l Benefit Fund*, No. 24-CV-1169, 2025 WL 552044, at *6 (S.D.N.Y. Feb. 19, 2025); *Rizzo*, 2024 WL 3274455, at *2; *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219, 2023 WL 2711415, at *5–6 (S.D.N.Y. Mar. 30, 2023).

The Court also considers the Parties' correspondence regarding Plaintiff's notice of the Court's recent decision in *Nanakumo v. New York City Health & Hosp. Cop.*, which also addressed a motion to dismiss a complaint filed by a plaintiff who alleged a bona fide religious belief.  23-CV-00314, 2025 WL 919479 (Mar. 26, 2025); *see* ECF Nos. 38–39.  Defendant argues that *Nanakumo* is inapposite because the defendants in that case did not question whether the plaintiff's request was religious in nature, in contrast to Defendant's position in the instant case.  *See* ECF No. 39.  But this distinction is not dispositive.  As the Court explained earlier, the "sincerity of a person's religious belief" is a factual question "unsuitable to resolution at the motion to dismiss stage."  *Gardner-Alfred*, 651 F. Supp. 3d at 721 (citing *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014); *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions.").

Next, although Defendant explained to Plaintiff that allowing her "to work fully remote would cause an undue hardship on the Company[,]" Defendant's motion does not address the

reasonableness of the accommodation. *See* Am. Compl. ¶ 56. In any event, "[d]etermining the nature of [Plaintiff's] role and the nature of hardship to [Defendant] require fact-intensive inquiries which [the Court] cannot resolve on a motion to dismiss." *Kueh*, 2024 WL 4882172 at *6; *see also Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 62 (2d Cir. 2021) ("[T]he reasonableness of an accommodation is a fact-specific question that often must be resolved by a factfinder.") (internal quotations marks omitted). Therefore, Plaintiff's Title VII religious discrimination claim survives.

## II. Plaintiff's NYSHRL and NYCHRL Claims Survive

Plaintiff's religious discrimination and claims brought under the NYSHRL and NYCHRL survive Defendant's. motion to dismiss. Both the NYSHRL and NYCHRL set forth that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer" to discriminate against an individual because of her "creed." N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a)(3). To survive a motion to dismiss a NYCHRL discrimination claim, a plaintiff must plead that "she was treated less well, at least in part for a discriminatory reason." *Verne v. New York City Dep't of Educ.*, No. 21-CV-5427, 2022 WL 4626533, at *17 (S.D.N.Y. Sept. 30, 2022) (cleaned up).

In 2019, the NYSHRL was amended "to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (quoting N.Y. Exec. Law § 300). "[I]t is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims." *Id.* (citation omitted).

13

Because Plaintiff has met the more stringent Title VII standard for pleading a claim of religious discrimination, her religious discrimination claims survive the less stringent NYSHRL and NYCHRL standards. *See Gahfi v. New York City Dep't of Educ.*, No. 23-CV-1782, 2025 WL 675933, at *7 (E.D.N.Y. Feb. 28, 2025) ("Regardless of the exact standard to be applied in the NYSHRL context, because plaintiff has met the higher Title VII standard for pleading a claim of religious discrimination, her claim under the 'more lenient' NYSHRL and NYCHRL also survive.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is **DENIED**. The Court **ORDERS** that Defendant file its Answer to the Amended Complaint within twenty-one (21) days of the entry of this order. In a separate order, the Court will refer this case to Magistrate Judge Valerie Figueredo for all general pretrial and settlement purposes.

The Clerk of Court is respectfully directed to terminate Defendant's motion at ECF No. 33.

**SO ORDERED.**

**Dated: June 12, 2025**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**